U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed July 19, 2012**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ERICKSON RETIREMENT | § | CASE NO. 09-37010-SGJ-11 |
| COMMUNITIES, LLC, *et al.*, | § | |
|     DEBTORS. | § | |
| | § | |
| | § | |
| DAN LAIN, TRUSTEE OF THE | § | |
| LIQUIDATING CREDITOR TRUST, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 11-03570 |
| | § | |
| V3 CONSTRUCTION GROUP, LTD., | § | |
|     DEFENDANT. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN
PREFERENCE/FRAUDULENT TRANSFER ACTION**

CAME ON FOR CONSIDERATION the Motion for Summary Judgment ("Motion"), with supporting Brief [DE ## 12 & 13], filed by Defendant V3 Construction Group, Ltd. ("Defendant"), along with Defendant's supporting affidavit and attachments [DE # 14]; the

-1-

response thereto and supporting affidavit filed by Plaintiff, Dan Lain, Trustee for the Liquidating Creditor Trust established in the above-referenced bankruptcy case ("Plaintiff" or "Liquidating Trustee") [DE #16]; and the reply of the Defendant thereto [DE # 17]. The parties stipulated that the Defendant's Motion could be decided on the written submissions without oral argument [DE # 18]. Based upon the summary judgment record and arguments presented, the court grants the Defendant's Motion. This ruling is issued pursuant to Federal Rule of Bankruptcy Procedure 7056.

## I.   INTRODUCTION

The above-referenced adversary proceeding (the "Adversary Proceeding") seeks avoidance and recovery of two prepetition payments made by one of the former Chapter 11 Debtors to the Defendant, as either preferences or fraudulent transfers (*see* 11 U.S.C. §§ 544, 547, 548, and 550). Bankruptcy subject matter jurisdiction exists in the Adversary Proceeding, pursuant to 28 U.S.C. § 1334(b). This bankruptcy court has authority to exercise bankruptcy subject matter jurisdiction, pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984.

Additionally, statutory "core" matters are involved in this Adversary Proceeding, pursuant to at least 28 U.S.C. § 157(b)(2)(F) and (H). As mentioned, this Adversary Proceeding

involves claims for alleged preferences and/or fraudulent transfers (*see* 11 U.S.C. §§ 544, 547, 548, and 550). Such claims are squarely "core," pursuant to 28 U.S.C. 157(b)(2)(F) and (H). Thus, pursuant to statute, the bankruptcy court has authority to enter final orders in this Adversary Proceeding. 11 U.S.C. § 157(b)(1). However, the Supreme Court recently opined, in *Stern v. Marshall*, that bankruptcy courts may sometimes lack Constitutional authority to issue final orders or judgments even in statutory core matters. *Stern v. Marshall*, 131 S. Ct. 2594 (2011) (involving state law tort counterclaims of an estate and the Constitutionality of 28 U.S.C. § 157(b)(2)(C)). Notwithstanding the holding in *Stern v. Marshall*, this bankruptcy court believes that it has Constitutional authority to issue a final order or judgment in this Adversary Proceeding, as the claims asserted arise under bankruptcy statutes.[1] Moreover, the court believes that the parties have provided necessary consent for the bankruptcy court to enter a final order in this Adversary Proceeding. *See* Complaint [DE #1], at ¶¶ 3-4; Answer [DE #8], at ¶¶ 3-4. However, in the event this bankruptcy court is found to lack Constitutional authority to enter this Memorandum Opinion and Order, this court submits this as a **proposed** ruling to the District Court. *See* 28 U.S.C. § 157(c)(1).

---

[1] 11 U.S.C. §§ 544, 547, 548, and 550.

## II. UNDISPUTED MATERIAL FACTS

The following material facts are not in controversy in this Adversary Proceeding.

A.   The Plaintiff in this Adversary Proceeding is Dan Lain, a liquidating trustee, who was appointed under the Fourth Amended Joint Plan of Reorganization, as amended (the "Plan"), that was confirmed in the above-referenced bankruptcy cases on April 16, 2010, and presides over a creditors trust for the above-referenced consolidated Chapter 11 Debtors (the "Debtors"). Section 6.4.4 of the Plan, and Article V, Section 5.1 and 5.2 of an ancillary Trust Agreement, granted authority to the Liquidating Trustee, as a successor in interest to certain causes of action of the Debtors, to commence this Adversary Proceeding.

B.   The Defendant is a firm that provides professional consulting engineering services and is located in Woodbridge, Illinois.

C.   On October 14, 2011, the Liquidating Trustee commenced this Adversary Proceeding against the Defendant. This Adversary Proceeding seeks to avoid and recover, as alleged preferential transfers, two payments made to the Defendant in the total amount of $48,285, pursuant to sections 547 and 550 of the Bankruptcy Code. The payments were made on July 17, 2009 (one in the amount of $43,456.50 and one in the amount of $4,828.50). These payments were in the form of checks, and both cleared on July 23,

2009 (hereinafter, the "Transfers"). The Transfers have also been challenged by the Liquidating Trustee as potentially avoidable fraudulent transfers, pursuant to sections 544, 548 and 550 of the Bankruptcy Code. The Liquidating Trustee has additionally objected to the Defendant being allowed any claim in the above-referenced bankruptcy case until the Transfers are returned, pursuant to section 502(d) of the Bankruptcy Code.

    D.   The Debtor that made the Transfers was an entity known as Erickson Construction, LLC (sometimes referred to hereinafter as the "Debtor"). Erickson Construction, LLC was in the business of constructing various retirement community projects across the United States and served as a general contractor at, among other places, a project located at 20 Riverside Road, Lincolnshire (Sedgwick campus) in Lake County, Illinois (the "Property"). The Defendant was one of several subcontractors for Erickson Construction, LLC on the Property.

    E.   Erickson Construction, LLC and the Defendant entered into an agreement entitled "Subcontract Agreement," dated November 17, 2008, which addressed the work that Defendant would perform at the Property in the total amount of $48,285 (the "Subcontract"). *See* Movant's App. 4-34 (Ex. 1 to Famiglietti Affidavit).[2]

---

[2] References to "Movant's App. __" refer to the Appendix in support of Defendant's Motion for Summary Judgment and the applicable page number(s) in said appendix. Movant's Appendix appears at DE # 14

F. The Defendant completed the contracted-for services in or about February 2009 (Movant's App. 2, ¶ 6), and, after completion, on February 11, 2009, provided Debtor with an Application and Certificate for Payment which certified that the work under the subcontract was completed and requested payment of $43,456.50. Movant's App. 2, ¶ 7; Movant's App. 36-38 (Ex. 2 to Famiglietti Affidavit). The Debtor was entitled to keep a 10% retainage—amounting to $4,828.50—for 60 days after the Defendant's submission of a final invoice after completion of the work; thus, this is why a payment of only $43,456.50 was requested by Defendant. Movant's App. 2, ¶ 8 (*see also* Ex. 1, at p.3, and Ex. 2, of Famiglietti Affidavit).

G. The Debtor did not timely pay the Defendant. Movant's App. 2, ¶ 9. Thus, the Defendant recorded a lien on the underlying Property on May 4, 2009, pursuant to Illinois's mechanics lien statutes. Movant's App. 2, ¶ 10, and 40-43 (Ex. 3 of Famiglietti Affidavit). *See also* 770 Ill. Comp. Stat. Ann. 60 (2012), *et seq.*

H. Next, on June 30, 2009, the Defendant provided the Debtor with an invoice in the amount of $4,828.50 for the 10% retainage payment. Movant's App. 3, ¶ 11, and 45 (Ex. 4 of Famiglietti Affidavit).

---

in the Bankruptcy Clerk's file maintained in this Adversary Proceeding.

    I.   Then, on July 17, 2009, the Debtor made the Transfers to the Defendant (one in the amount of $43,456.50 and one in the amount of $4,828.50, for an aggregate amount of $48,285).  As noted earlier, these Transfers were in the form of checks, and both cleared July 23, 2009.  Movant's App. 3, ¶ 12, and 54 (Ex. 5 of Famiglietti Affidavit).

    J.   It appears to be unrefuted that the Transfers were made from a bank account that Erickson Construction, LLC maintained. Movant's App. 54.

    K.   The Defendant was a creditor of Erickson Construction, LLC at the time of receiving the Transfers.

    L.   The Transfers were made on account of antecedent debt owing to the Defendant that had been invoiced to Erickson Construction, LLC by the Defendant (through an "Application and Certificates for Payment" and Invoice for Release of Final Retention dated June 30, 2009) before the Transfers.  Movant's App 35-38; 44-45).

    M.   The Defendant asserts (and Plaintiff has not refuted in the summary judgment record) that these Transfers were made as consideration for the Defendant's services at the Property and ***were also made as consideration for the release of the Defendant's lien on the Property***.  Movant's App. 3, ¶ 12. On July 22, 2009, a release of a lien was recorded on behalf of the Defendant with regard to the Property.  Movant's App. 3, ¶ 14,

and 56-58 (Ex. 6 of Famiglietti Affidavit).

N. The Transfers to Defendant were made within 90 days of Erickson Construction, LLC's bankruptcy filing (Erickson Construction, LLC filed bankruptcy on October 19, 2009 (the "Petition Date"); the 90th day before the date of the filing of the bankruptcy case was July 21, 2009).

O. The Debtor is presumed to have been insolvent at the time of the Transfers, pursuant to 11 U.S.C. § 547(b)(f), and the Defendant does not refute that.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate whenever a movant establishes that the pleadings, affidavits, and other evidence available to the court demonstrate that no genuine issue of material fact exists, and the movant is, thus, entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). A genuine issue of material fact is present when the evidence is such that a reasonable fact finder could return a verdict for the non-movant. *Piazza's Seafood World, LLC,* 448 F.3d at 752 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Material issues are those that could affect the outcome of the action. *Wyatt v. Hunt Plywood Co. Inc.*, 297 F.3d 405, 409 (5th Cir. 2002), *cert. denied*, 537 U.S. 1188

(2003). The court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC,* 448 F.3d at 752; *Lockett,* 337 F. Supp. 2d at 891. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett,* 337 F. Supp. 2d at 891; *see also Ashe v. Corley,* 992 F.2d 540, 543 (5th Cir. 1993). The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett,* 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(c)(1); *Piazza's Seafood World, LLC,* 448 F.3d at 752; *Lockett,* 337 F. Supp. 2d at 891. Thus, summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## IV. RULING AND REASONS THEREFORE

The Defendant has demonstrated that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. The court concludes that Defendant did ***not***

receive a transfer of an interest of the Debtor in property as a matter of law, so the Transfers cannot be avoided.

**A. Elements of a Preference.**

With regard to the preference claim asserted by the Liquidating Trustee, Section 547(b) of the Bankruptcy Code is the relevant statute. It states that a transfer of property may be avoided as a "preference" only if the following elements are established by the plaintiff: (a) the transfer was "of an interest of the debtor in property"; (b) the transfer was "to or for the benefit of a creditor"; (c) the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer"; (d) it was made while the debtor was insolvent;[3] (e) it was made on or within 90 days before the bankruptcy petition date (for non-insider creditors; for insiders, the reach-back period is one year); and (f) the transfer enabled the creditor to receive more than such creditor would have received in a hypothetical chapter 7 bankruptcy case, if the prepetition transfer had not been made. 11 U.S.C. § 547(b) & (g).

**B. The Illinois Mechanics Lien Act ("IMLA").**

The Defendant admits to receiving the Transfers, and, in fact, admits to most of the elements of a preference being established by the Liquidating Trustee (*i.e.,* at least elements

---

[3] Insolvency is presumed to have existed on and during the 90 days preceding the date of the filing of the debtor's bankruptcy petition. 11 U.S.C. § 547(f).

(b)-(e) set forth above). However, the Defendant argues that the Transfers that it received were not transfers of an interest of the Debtor in property—more specifically, Defendant argues that the Debtor held the property that was the subject of the Transfers ***in trust*** for the Defendant's benefit and that the Debtor itself had no interest in the Transfers. The Defendant argues that the Illinois Mechanics Lien Act, 770 Ill. Comp. Stat. Ann. 60 (2012), *et seq.* (the "IMLA") imposes a statutory trust upon any funds owed by a contractor when that contractor requires the waiver of a mechanic's lien in exchange for payment or promise of payment. In other words, the IMLA provides that any contractor who requests the execution and delivery of a waiver/release of a mechanics lien as a condition to making a payment to a subcontractor shall hold in trust the sums ultimately received by/paid to the subcontractor as a result of the release of the mechanics lien. The Defendant argues that it is entitled to judgment as a matter of law (on both the preference, section 547 claims, as well as the fraudulent transfer, section 548 and 544 claims)[4] in that the Transfers were ***made from property that was held in trust for the Defendant's benefit*** pursuant to this Illinois statute. The Defendant

---

[4] With fraudulent transfer claims, as in the case of a preference claim, a plaintiff bears the burden of proving that the transfer involved was of "an interest of the debtor in property" before even reaching the various other elements of the claim. *E.g.,* 11 U.S.C. § 548(a)(1).

alternatively (and relatedly) argues that the Transfers did not allow the Defendant to receive "more" than it would have in a hypothetical Chapter 7 case, if not for the Transfers being made, since the Transfers were held in trust for the Defendant.[5]

In determining whether the Transfers were transfers of "an interest of the debtor in property" and whether the Defendant actually "received more" here than it would have in a hypothetical Chapter 7 case, if not for the Transfers, one must, indeed, start with state law to determine whether "property of the debtor" was transferred to a defendant or not. *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). It is undisputed that Illinois law (the site of the Property) applies with regard to the property/funds transferred to Defendant. *See, e.g.,* Movant's App. 9, ¶ 16. Illinois law—specifically, the IMLA—has provisions to protect subcontractors and suppliers who furnish labor or materials for construction of buildings or other improvements. 770 Ill. Comp. Stat. Ann. 60 (2012), *et seq.; see also In re Golfview Dev. Ctr., Inc.,* 309

---

[5] Defendant also raises various affirmative preference defenses (new value; contemporaneous exchange; ordinary course of business). 11 U.S.C. § 547(c)(1), (2), and (4).

B.R. 758, 767 (Bankr. N.D. Ill. 2004). Among such provisions in the IMLA is a trust fund provision that imposes a statutory trust on money owed and paid over to a subcontractor where it is paid over ***in exchange for a lien release***. Such provision reads as follows:

> (a) Money held in trust; trustees. Any owner, contractor, subcontractor, or supplier of any tier who requests or requires the execution and delivery of a waiver of mechanics lien by any person who furnishes labor, services . . . for the improvement of a lot or a tract of land in exchange for payment or the promise of payment, shall hold in trust the unpaid sums received by such person as a result of the waiver of mechanics lien, as trustee for the person who furnished the labor, services . . . in exchange for such waiver.
>
> (b) How trust moneys held; commingling. Nothing contained in this Section shall be construed as requiring moneys held in trust by an owner, contractor, subcontractor, or material supplier under this Section to be placed in a separate account. If an owner, contractor, subcontractor, or material supplier commingles moneys held in trust under this Section with other moneys, the mere commingling of the moneys does no constitute a violation of this Section.

770 Ill. Comp. Stat. Ann. 60/21.02 (2012). *See also In re Raymond Prof. Grp.,* Nos. 09 C 6032, 10 C 3325, 2011 WL 528551, at *3 (N.D. Ill. Feb. 8, 2011) (holding that funds held in trust pursuant to IMLA were not part of the bankruptcy estate). Courts have explained this trust fund provision as follows:

> In the construction industry, "[i]t is not uncommon . . . for a contractor or subcontractor to furnish a lien waiver swearing she has been paid even though, in fact, she has not been paid." 24 Ill. Prac., Ill. Construction Law Manual § 13:46 (2009-10 ed.). Thus, the Illinois Mechanics Lien Act creates a trust when a contractor or subcontractor provides a lien waiver in

-13-

      exchange for payment or the promise of payment. *See* 770 ILCS 60/21.02(a).

*Raymond*, 2011 WL 528551, at *3. The *Raymond* case went on to elaborate that "'The purpose of the Act is to protect contractors and subcontractors providing labor and materials for the benefit of an owner's property.'" *Id.* at *4 (citing *Weather-Tite, Inc. v Univ. of St. Francis*, 233 909 N.E.2d 830, 834 (Ill. 2009)).

    Indeed, in the case at bar, the Defendant executed (on July 21, 2009) and recorded (on July 22, 2009) a release and waiver of its lien against the Property **before** its payments from the Debtor actually cleared (July 23, 2009). Movant's App. 56-58 (Ex. 6 of Famiglietti Affidavit). And it is undisputed that the payments by the Debtor to Defendant were made as consideration not only for the Defendant's services on the Property **but also as consideration for the release of the Defendant's lien on the Property**. Movant's App. 3, ¶ 12. It appears that this is precisely the scenario that the ILMA trust provisions were intended to address. If a subcontractor releases a lien on real property on which he did work in exchange for a payment, then, according to the statute, the subcontractor ought to have special protection with regard to the payment it receives—such special protection is that the payment will be deemed, by statute, to have been the subcontractor's trust funds. This special protection will make the payment immune from avoidance in

bankruptcy. *Raymond*, 2011 WL 528551, at *4-6. *See also Begier v. IRS*, 496 U.S. 53, 67 (1990) (prepetition withholding tax payments, as trust funds, were not avoidable transfers of property of the debtor).

## C. Is Tracing Nevertheless Required?

The Liquidating Trustee argues that the Defendant has failed to demonstrate the absence of a genuine issue of material fact because, according to Plaintiff, the Defendant must still trace its Transfers to its trust property. Thus, it is argued, the Defendant cannot establish as a matter of law that the funds it received were those held in trust specifically for it. It is true that, in similar preference adversary proceedings before this court related to the above-referenced bankruptcy case, this court has so-ruled (*i.e.,* ruled that **while there was a possibility that a subcontractor was paid from trust funds that were immune from preference attack**, there was still a question of fact regarding whether the funds paid to the subcontractor could indeed be traced back to the funds sent by the owner of the Property to the contractor on account of the subcontractor's work). *See, e.g.,* Adv. Proc. 11-03335, *Lain v. Brannan Sand & Gravel Co., L.L.C., at* [DE # 28], and Adv. Proc. 11-03375, *Lain v. Split-Rail Fence Co., Inc., at* [DE #25]. But here, the Illinois statute appears to be worded quite differently than the state law that was involved in those other adversary proceedings

(Colorado law was involved in the other adversary proceedings referenced). Here, under Illinois law, a trust appears to be created upon the **funds ultimately paid** to the subcontractor in connection with the execution of the release of lien by the subcontractor. This is different from a statute, such as in Colorado, in which a trust is imposed (in favor of subcontractors) **simply upon funds paid by a property owner to a contractor** and, thereby, creating a genuine tracing issue as to whether those **same** funds paid by the property owner to the contractor were ultimately paid to the subcontractor.[6]

Plaintiff alternatively argues that even if the Defendant's Transfers were subject to a statutory trust, the Defendant cannot establish as a matter of law that the Transfers were specifically held in trust for the Defendant because there were several liens

---

[6] As discussed in this court's opinions issued in the other adversary proceedings referenced above (Adv. Proc. 11-03335, *Lain v. Brannan Sand & Gravel Co., L.L.C.*, at [DE # 28], and Adv. Proc. 11-03375, *Lain v. Split-Rail Fence Co., Inc.*, at [DE #25]), Colorado's legislature has imposed a general statutory trust on all funds disbursed to a contractor or subcontractor for the benefit of laborers and suppliers who have furnished services on a particular construction project. Colo. Rev. Stat. § 38-22-127(1) ("All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or any construction project shall be held in trust for the payment of the subcontractors, laborers or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property . . . and for which such disbursement was made"). Whenever a contractor pays a subcontractor, this begs the question of whether the payment can be traced to these same funds initially disbursed to the contractor from the property owner. In Illinois, the statute imposes a trust on the exact funds paid to the subcontractor in consideration for a lien release. Thus, there is no need to trace.

-16-

on the same Property and, Plaintiff argues, under Illinois law, where the contractor has insufficient funds to pay all of the liens on the same property, the funds are distributed to each lien holder "pro rata . . .in proportion to the amounts so found to be due them respectively" (citing 770 Ill. Comp. Stat. Ann. 60/30 (2012)). This court agrees with Defendant that Section 30 of the IMLA does not apply to the Transfers or create a fact issue as to whether Defendant may have received a preference. Section 30 applies where a lien holder has not been paid and where there are multiple mechanics liens on the same property. No such facts exist here—the Defendant was paid. In the event that Plaintiff is attempting to suggest that Section 30 of IMLA is relevant to the "receives more" preference element (*i.e.,* the requirement in Section 547(b)(5) that, in order for a transfer of property to be an avoidable preference, it must have enabled the creditor-recipient to have received more than it would have received in a hypothetical Chapter 7 case if not for the payment), the court still does not accept Section 30's relevance. At first blush, it seems somewhat appealing, intellectually, to proceed down the path of: (a) assuming Defendant did not receive the Transfers; (b) assuming further Debtor filed a Chapter 7 bankruptcy case with a pot of assets that were insufficient to pay all creditors (including subcontractors) in full; and then, (c) concluding that creditors/subcontractors would share *pro rata*

in Debtor's assets- meaning Defendant would receive less in Chapter 7. The problem, though, with this path is that the Section 547(b)(5) "receives more" element of a preference claim ***only becomes germane if a transfer of an interest of the debtor in property is involved from the beginning***. Here, it is legally incorrect to undertake the hypothetical analysis contemplated in Section 547(b)(5) when, by operation of the IMLA, the Transfers were deemed held in trust and deemed not property of the Debtor from the outset.

## V. CONCLUSION

In summary, the court concludes that Defendant has met its burden of demonstrating that no genuine issue of material fact exists in this Adversary Proceeding. Defendant is entitled to judgment as a matter of law. Restated, the court concludes that the Plaintiff has not come forward with evidence that, if true, might support a judgment in Plaintiff's favor. Wherefore, it is

**ORDERED** that no genuine dispute as to any material fact exists in this Adversary Proceeding; and it is further

**ORDERED** that the Defendant's Motion for summary judgment is **GRANTED**;[7] and it is further

---

[7] This Memorandum Opinion and Order has almost exclusively addressed the Liquidating Trustee's preference claim against the Defendant (just as the Liquidating Trustee's Complaint and the Motion for Summary Judgment and responsive pleadings primarily did). As mentioned herein, the Liquidating Trustee also asserted as an alternatively theory for relief that the Transfers were avoidable as fraudulent transfers under either section 544 of the Bankruptcy Code

**ORDERED** that the Defendant shall submit a form of Judgment consistent herewith.

###END OF ORDER###

---

(and state law) or section 548 of the Bankruptcy Code.  As in the case of preference law, a plaintiff bears the burden of proving that a transfer was of "an interest of the debtor in property" in order to establish a fraudulent transfer.  As discussed above, the Transfers were of property that was held in trust for the Defendant, pursuant to the IMLA.  Thus, for all the same reasons discussed above in connection with the preference analysis, the Defendant is entitled to summary judgment on the Plaintiff's fraudulent transfer claims.